ANDRÉ BIROTTE JR.
United States Attorney
SHERI PYM
Assistant United States Attorney
Chief, Riverside Branch Office
DANIEL ACKERMAN (Cal. Bar No. 215797)
Assistant United States Attorney
     3880 Lemon Street
     Suite 210
     Riverside, California 92501
     Telephone:  (951) 276-6087
     Facsimile:  (951) 276-6944
     E-mail:     daniel.ackerman@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | ED CR No. 09-122(A)-VAP |
| | ) | |
| Plaintiff, | ) | **GOVERNMENT'S SENTENCING POSITION** |
| | ) | **FOR DEFENDANT JASON DUANE WILSON;** |
| v. | ) | **MEMORANDUM OF POINTS AND** |
| | ) | **AUTHORITIES** |
| JASON DUANE WILSON, | ) | |
| | ) | SENTENCING DATE: 12-13-10 |
| Defendant. | ) | |
| | ) | SENTENCING TIME: 9:00 a.m. |
| | ) | |

        Plaintiff United States of America, by and through its

counsel of record, Assistant United States Attorney Daniel

Ackerman, hereby files its sentencing position regarding

defendant Jason Duane Wilson.  The government's position is based

upon the attached memorandum of points and authorities, the

United States Probation Office's Presentence Investigation

Report, the files and records in this case, and any other

\\

\\

1   evidence or argument that the Court may wish to consider at the

2   time of sentencing.

3       The government reserves the right to file a response to any

4   sentencing position filed or submitted by defendant and to file

5   any supplemental sentencing position(s) that may be necessary.

6   Dated: November 17, 2010

7

                                    Respectfully submitted,
8
                                    ANDRÉ BIROTTE JR.
9                                   United States Attorney

10                                  SHERI PYM
                                    Assistant United States Attorney
11                                  Chief, Riverside Branch Office

12
                                      /s/
13                                  DANIEL ACKERMAN
                                    Assistant United States Attorney
14
                                    Attorneys for Plaintiff
15                                  United States of America

16

17

18

19

20

21

22

23

24

25

26

27

28

MEMORANDUM OF POINTS AND AUTHORITIES

I.

INTRODUCTION

On September 8, 2010 defendant Jason Duane Wilson ("defendant") pled guilty to transportation into prostitution, in violation of 18 U.S.C. § 2421.  This was the single count in the first superseding information.

On November 5, 2010, the United States Probation Office ("USPO") disclosed the Presentence Investigation Report ("PSR") for defendant.  The USPO calculated defendant's total offense level at 27 and criminal history category at IV for an advisory Sentencing Guidelines range of 100 to 120 months imprisonment. This calculation includes a two-level increase for unduly influencing a minor to engage in prohibited sexual conduct under U.S.S.G. § 2G1.3(b)(2)(B), and another two-level increase for committing the offense in connection with a commercial sex act under U.S.S.G. § 2G1.2(b)(4)(B).  The calculation also includes a two-level increase pursuant to U.S.S.G §§ 2G1.3(d)(1) and 3D1.4(a) because, though the defendant pled guilty to only one count, the relevant conduct involved two minor victims.  Finally, the calculation includes a three-level reduction for acceptance of responsibility under U.S.S.G. §§ 3E1.1(a) and (b). (PSR ¶¶ 19-21, 25-28, 32-40, 42, 65-66, 106).

The government does not object to the facts set forth in the PSR, or contest the accuracy of the USPO's Sentencing Guidelines calculations, and recommends the following total adjusted offense level:

| | | | |
|---|---|---|---|
| Base Offense Level | : | 24 | [U.S.S.G. § 2G1.3(a)(4)] |
| Undue Influence | : | +2 | [U.S.S.G. § 2G1.3(b)(2)(B)] |
| Commerical Sex Act | : | +2 | [U.S.S.G. § 2G1.3(b)(4)(B)] |
| Multiple Victims | : | +2 | [U.S.S.G. §§ 2G1.3(d)(1), 3D1.4(a)] |
| Acceptance of Responsibility | : | -3 | [U.S.S.G. § 3E1.1(a),(b)] |
| Total Adjusted: Offense Level | : | 27 | |

The government concurs with the criminal history calculation set forth in the PSR: namely, a criminal history category of IV. This results in a guidelines range of 100 to 120 months, in Zone C. Based upon the plea agreement and the factors set forth in 18 U.S.C. § 3553(a), the government respectfully submits that a 100-month period of incarceration is appropriate for this defendant based upon his criminal conduct in this case and his criminal history.

II.

<u>STATEMENT OF FACTS</u>

Defendant met N.L. and S.H. on the streets of Detroit in mid-2007 after they had run away from their group home. N.L. and S.H. told defendant they were sixteen, after they had initially lied and told him that they were 18 and 17, respectively. Defendant told the girls that he was in the adult entertainment business and that he could take care of them. The girls agreed to come with him and defendant then moved them into a residence in Detroit. (PSR § 9.)

Defendant told N.L. and S.H. that they were too young to

2

work in most facets of the adult entertainment business.
However, they could work "the track" for him in California,
meaning they could become prostitutes.  Defendant explained that
they would have to earn their ticket there by orally copulating
him.  S.H. refused but defendant became angry and then grabbed
her head and forced it onto his penis.  He then told her
"[r]emember what I said? If you don't do what I say, I'll kill
you." S.H. then orally copulated defendant, as did N.L.  A few
days later, defendant purchased bus tickets for N.L. and S.H. and
sent them to San Bernardino, California, with K.F., one of the
defendant's adult prostitutes. (PSR § 10.)

In San Bernardino, defendant provided N.L. and S.H. with
skirts, hair weaves and wigs.  Defendant then drove N.L. and S.H.
to different locations in San Bernardino, Orange, and Los Angeles
counties to work as prostitutes. N.L. and S.H. walked the streets
and tried to exchange sex for money with men. N.L. and S.H. would
let defendant know they had gotten a "date" by "chirping" him on
a Nextel phone he had provided each of them.  After the date,
N.L. and S.H. would give defendant money they had been paid. (PSR
§ 11.)

Defendant then arranged for N.L. and S.H. to work as
prostitutes in Las Vegas over the July 4th holiday weekend.  One
of defendant's adult prostitutes drove N.L. and S.H. to Las Vegas
in a van on June 28, 2007.  Defendant paid for N.L. and S.H. to
stay at a hotel in Las Vegas and he then drove them to different
streets in Las Vegas to try and get "dates" in exchange for
money.  N.L. and S.H. failed to get any "dates" and defendant

terminated their employment as prostitutes when they returned to San Bernardino a few days later.  (PSR § 12.)

### III.

### ANALYSIS OF THE SECTION 3553(a) FACTORS

The government believes that the factors set forth in 18 U.S.C. § 3553(a) would be fulfilled by the recommended sentence.

A.   18 U.S.C. § 3553(a)(1)

18 U.S.C. § 3553(a)(1) requires the Court to consider the nature and circumstances of the offense and the history and characteristics of defendant.  Defendant's conduct was reprehensible.  He lured N.L. and S.H. into his world by promising to take care of them and giving them shelter.  Instead, he cruelly intimidated and sexually abused them. (PSR ¶ 9.)  He then put them in even greater danger by forcing them to work as prostitutes on the streets of multiple cities. (PSR ¶¶ 9, 11-12.)

Defendant's criminal history indicates he has pimped before. In fact, he was on probation for similar conduct at the time he committed the instant offense.  (PSR ¶¶ 52, 64.) In the defendant's probation case, he told Santa Ana police officers that "I'm not going to lie to you. You know what I do for a living. I have only been doing it for 11 months."  (PSR ¶ 54.) He then added that—as in the instant case—he would give the girls a ride, "watch them and make sure they are safe."  (PSR ¶ 54.) Although defendant said he only made "crumbs", it should be noted that he was arrested again in Santa Ana for supervising prostitution in July, 2006, though no prosecution resulted this time.  (PSR ¶¶ 54, 72.) Additionally, defendant is a convicted felon with convictions for marijuana transportation, burglary,

4

1  and attempted carrying of a concealed weapon, specifically, a
2  loaded 9mm handgun. (PSR ¶¶ 46, 49, 52, 54, 60, 62.)

3      Against this backdrop, the defendant's remorse comes too
4  late.  Defendant should have known, after his 2005 pimping
5  conviction, that he risked serious consequences if he did not
6  change his ways. He should have also appreciated that his
7  probationary sentence gave him a chance to pay his debt to
8  society without any lengthy period of incarceration.  Defendant
9  must be held fully accountable for his actions and, in the
10 government's view, a sentence of 100 months will accomplish that.

11      B.   18 U.S.C. § 3553(a)(2)

12      18 U.S.C. § 3553(a)(2) requires the Court to consider the
13 need for the sentence to reflect the seriousness of the offense,
14 to promote respect for the law, to provide just punishment for
15 the offense, to afford adequate deterrence to criminal conduct,
16 to protect the public from further crimes of defendant, and to
17 provide defendant with needed educational or vocational training,
18 medical care, or other correctional treatment in the most
19 effective manner.  This factor also supports the government's
20 requested sentence.

21      As discussed above, the defendant sexually and emotionally
22 abused N.L. and S.H.  His criminal history indicated he had
23 engaged in this kind of conduct before and had suffered
24 relatively minor consequences for it.  A 100-month sentence will
25 promote respect for the law, deter future criminal conduct and
26 protect the community by signaling that people who commit these
27 acts will be held accountable regardless of their personal
28 history or remorse.

C.    <u>18 U.S.C. § 3553(a)(6)</u>

18 U.S.C. § 3553(a)(6) requires the Court to minimize sentencing disparity among similarly situated defendants.  Using the Sentencing Guidelines to sentence defendant accomplishes this goal.  Variation from the Guidelines range necessarily increases sentencing disparity among similarly situated defendants.

In this case, a 100-month sentence is at the low end of the applicable Guidelines range.  Therefore, the government's recommended sentence is appropriate pursuant to this sentencing factor as well.

D.    <u>The Remaining 3553(a) Factors Also Support the Sentence Requested by the Government</u>

18 U.S.C. § 3553(a)(3) requires the Court to consider the kinds of sentences available.  Incarceration is appropriate given the nature of defendant's offense and his criminal history.

18 U.S.C. § 3553(a)(4) & (5) now merely require the Court to take the sentencing Guidelines as "advisory."  Finally, although 18 U.S.C. § 3553(a)(7) requires the Court to consider restitution, it is not at issue in this case.

IV.

<u>CONCLUSION</u>

The government submits that a sentence of 100 months adequately accounts for the circumstances surrounding defendant's offense and appropriately reflects the goals and purposes of sentencing set forth in 18 U.S.C. § 3553(a).

DATED: November 19, 2010        Respectfully submitted,

                                  ANDRÉ BIROTTE JR.
                                  United States Attorney

                                  SHERI PYM
                                  Assistant United States Attorney
                                  Chief, Riverside Branch Office

                                     /s/
                                  DANIEL ACKERMAN
                                  Assistant United States Attorney

                                    Attorneys for Plaintiff
                                  United States of America